712 A.2d 631

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
LLOYD BURGESS, DEFENDANT–RESPONDENT.

Argued March 17, 1998—Decided June 10, 1998.

*Nancy A. Hulett*, Deputy Attorney General, argued the cause for appellant (*Peter Verniero*, Attorney General of New Jersey, attorney).

*Salvatore C. Adamo* argued the cause for respondent.

*J. Michael Blake*, Assistant Deputy Public Defender, argued the cause for *amicus curiae*, the Office of the Public Defender (*Ivelisse Torres*, Public Defender, attorney).

PER CURIAM.

Defendant seeks post-conviction relief from his 1990 conviction as a "leader of a narcotics trafficking network" under *N.J.S.A.* 2C:35–3, which has come to be known as the drug kingpin statute. The trial court sentenced defendant on that count to life imprisonment with twenty-five years of parole ineligibility. Defendant was also convicted on two counts of second-degree and six counts of third-degree drug distribution. The trial court sentenced him to seven years on each of the second-degree convictions and four years on each of the third-degree convictions. All sentences were ordered to run concurrently.

The facts are set forth in the opinion of the Appellate Division reported at 298 *N.J.Super.* 254, 689 *A.*2d 730 (1997). Defendant

and others were engaged in drug trafficking at the Lakewood Housing Authority's projects:

[D]efendant was involved in a cocaine-trafficking scheme with at least four other persons. Two were street dealers, one assisted in breaking down larger quantities of cocaine into sales units and at times made purchases of cocaine for defendant in New York, and the fourth was defendant's girlfriend, who assisted in supplying the street dealers.

[*Id.* at 257, 689 A.2d 730.]

Defendant's case was tried, his conviction was affirmed by the Appellate Division, and this Court denied his petition for certification, 134 *N.J.* 566, 636 *A.*2d 523 (1993), all before this Court announced its decision in *State v. Alexander,* 136 *N.J.* 563, 643 *A.*2d 996 (1994). *Alexander* held that in order to convict under *N.J.S.A.* 2C:35–3, a jury should be instructed that it must find that a defendant held an "upper-echelon" or "high-level" role as a leader of a drug trafficking network. *Alexander, supra,* 136 *N.J.* at 570–71, 643 *A.*2d 996.

The trial court's instructions to the jury tracked the language of the 1988 version of the Model Jury Charge, which called for little more than a recitation of the words of the kingpin statute together with definitions of "conspiracy" and "distribute." *New Jersey Model Jury Charges, Criminal, Leader of a Narcotics Trafficking Network, N.J.S.A.* 2C:35–3 (Oct. 17, 1988). The charge did not explain that the jury must find that the defendant was an "upper-echelon" leader of the network. The charge did not define terms such as "organizer," "supervisor," "financier," or "manager" in a manner consistent with *Alexander.*

Defense counsel did not object to the lack of specificity in the trial court's charge, and the trial court's failure to define the terms of the kingpin statute was not a basis of defendant's appeal to the Appellate Division. Defendant did raise the definitional argument in his initial petition for certification to this Court, which he submitted after the Appellate Division filed its decision in *State v. Alexander,* 264 *N.J.Super.* 102, 624 *A.*2d 48 (1993). That petition was denied. 134 *N.J.* 566, 636 *A.*2d 523.

Following our decision in *Alexander*, defendant filed a *pro se* petition for post-conviction relief on the ground that the trial court's instruction did not conform to the charge endorsed by this Court in *Alexander*. The State countered by arguing (1) that *Rule* 3:22-4 bars post-conviction relief on grounds not raised on direct appeal; (2) that *Alexander* was not retroactive; and (3) that the State's evidence left no doubt that defendant was a kingpin within the meaning of the statute, so that any error was harmless. The trial court agreed that the challenge to the jury instruction was procedurally barred and that *Alexander* should not apply retroactively to defendant's case.

On appeal, a majority of the Appellate Division concluded that our decision in *Alexander* required reversal of defendant's 1990 kingpin conviction, 298 *N.J.Super.* at 262–72, 689 *A.*2d 730, and that the procedural bar of *Rule* 3:22-4 should not apply because denial of post-conviction relief would violate constitutional guarantees. *Id.* at 261, 689 *A.*2d 730. One judge dissented, finding no legal justification to reverse defendant's well-merited kingpin conviction. *Id.* at 276, 689 *A.*2d 730 (Humphreys, J., dissenting). We now affirm the judgment of the majority of the Appellate Division.

The issues in this appeal are (1) whether the principles of *Alexander* should apply retroactively to a case tried before that decision issued, (2) whether post-conviction relief on the basis of *Alexander* is barred under *Rule* 3:22-4, and (3) whether such relief is warranted.

I

We considered whether the principles of *Alexander* should be applied to cases tried before that decision. in *State v. Afanador,* 151 *N.J.* 41, 57–59, 697 *A.*2d 529 (1997) (*Afanador II* ). We there held that *Alexander* did not create a new rule of law but merely executed the Legislature's intent in passing the drug kingpin statute. *Id.* at 57, 697 *A.*2d 529. Thus, the question of the retroactivity of our *Alexander* decision does not arise. *Ibid.* Nor need we address the application of the federal retroactivity princi-

ples that appear in *Griffith v. Kentucky,* 479 *U.S.* 314, 107 *S.Ct.* 708, 93 *L. Ed.*2d 649 (1987), and *Teague v. Lane,* 489 *U.S.* 288, 109 *S.Ct.* 1060, 103 *L. Ed.*2d 334 (1989).

## II

The State urges that *Rule* 3:22–4 bars defendant's *Alexander*-based challenge. That rule provides:

> Any ground for relief not raised in a prior proceeding under this rule, or in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds (a) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey.
>
> [*R.* 3:22–4.]

Defendant sought to raise the instruction issue in his direct appeal to this Court. We denied his petition for certification. Because the filing and denial of the petition were part of "the proceedings resulting in the conviction," *Rule* 3:22–4 should not bar this application for post-conviction relief.

## III

The State argues that defendant is not entitled to post-conviction relief because the deficiency of the jury instruction did not result in a substantial denial of defendant's constitutional rights. We disagree. "Appropriate and proper charges to a jury are essential to a fair trial." *State v. Green,* 86 *N.J.* 281, 287, 430 *A.*2d 914 (1981). And proper explanation of the elements of a crime is especially crucial to the satisfaction of a criminal defendant's due process rights. *See State v. Martin,* 119 *N.J.* 2, 15–17, 573 *A.*2d 1359 (1990). We held in *Alexander, supra,* that the "status or position" of a drug kingpin "should be considered a material element of the crime." 136 *N.J.* at 570, 643 *A.*2d 996. By failing to define the kind of supervisory status that qualifies a defendant as a drug kingpin, the trial court in this case gave an

insufficient explanation of a material element. We stated in *State v. Federico,* 103 *N.J.* 169, 176, 510 *A.*2d 1147 (1986), that such "failure to charge the jury on an element of an offense is presumed to be prejudicial error, even in the absence of a request by defense counsel."

■ The denial of defendant's constitutional rights was not made any less prejudicial by the fact that defendant argued at trial that he was not an upper-echelon leader of the conspiracy. "Arguments of counsel cannot substitute for correct instructions of law. The trial judge is the most authoritative figure in the courtroom. Jurors naturally look to the judge for definition of the offenses charged." *Afanador II, supra,* 151 *N.J.* at 56, 697 *A.*2d 529. The fact that the defense put defendant's leadership status in dispute does not mitigate the unfairness of an instruction that would have allowed the jury to convict defendant as a kingpin when defendant's conduct, as the jury might have found it, fell short of "leadership of a drug trafficking network." *Alexander, supra,* 136 *N.J.* at 570–71, 643 *A.*2d 996.

■ The State contends that the evidence in this case was not equivocal, as it was in *State v. Afanador,* 134 *N.J.* 162, 178, 631 *A.*2d 946 (1993) (*Afanador I* ). The State's evidence showed that defendant operated a drug distribution network and employed several people to help him run it—Brown, who sold the drugs; Catalan and Martin, who replenished the supply when Brown sold the cocaine; another "strong arm" man to collect debts; and Williams, who would take trips to New York City to buy cocaine for defendant and help defendant package the drugs for retail sale. Defendant, as the leader of the conspiracy, kept himself well insulated from these activities. However, the factual issues were in dispute. Defendant denied that Brown sold cocaine for him, that Martin worked for him, that he had asked Catalan to work for him, and that he employed an enforcer. On this record, a correctly charged jury could reasonably have concluded that defendant was not guilty under *N.J.S.A.* 2C:35–3. There was a sufficient basis for a properly charged and rational jury to find

that defendant was not a drug kingpin. Therefore, under *State v. Coyle,* 119 *N.J.* 194, 211, 574 *A.*2d 951 (1990), defendant is entitled to a new trial on the drug kingpin count. He stands convicted of the numerous counts of second- and third-degree drug distribution.

The judgment of the Appellate Division is affirmed.

*For Affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.